[Cite as *Easley v. Ohio Dept. of Rehab. & Corr.*, 2009-Ohio-7047.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DAVID EASLEY

      Plaintiff

      v.

OHIO DEPARTMENT OF REHABILITATION AND CORRECTION

      Defendant
      Case No. 2008-01634

Judge Clark B. Weaver Sr.
Magistrate Steven A. Larson

<u>MAGISTRATE DECISION</u>

{¶ 1} Plaintiff brought this action alleging that defendant's corrections officers assaulted him; that other employees lost his personal property; that he was subjected to patient abuse and neglect at the hands of defendant's mental health staff; that the Rules Infraction Board (RIB) violated his right of due process; and that he was not provided with proper nourishment. The issues of liability and damages were bifurcated and the case proceeded to trial before a magistrate on the issue of liability.

{¶ 2} At all times relevant, plaintiff was an inmate in the custody and control of defendant at the Southern Ohio Correctional Facility (SOCF) pursuant to R.C. 5120.16. In Counts One through Four of his complaint, plaintiff alleges that on several occasions, SOCF employees assaulted him.

{¶ 3} The Ohio Administrative Code sets forth the circumstances under which force may be lawfully utilized by prison officials and employees in controlling inmates. Ohio Adm.Code 5120-9-01(C) provides, in relevant part:

{¶ 4} "(2) Less-than-deadly force. There are six general circumstances in which a staff member may use force against an inmate or third person. A staff member may use less-than-deadly force against an inmate in the following circumstances:

{¶ 5} "(a) Self-defense from physical attack or threat of physical harm;

{¶ 6} "(b) Defense of another from physical attack or threat of physical attack;

{¶ 7} "(c) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders;

{¶ 8} "(d) When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance;

{¶ 9} "(e) Prevention of an escape or apprehension of an escapee; or

{¶ 10} "(f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶ 11} The court has recognized that "corrections officers have a privilege to use force upon inmates under certain conditions. * * * Obviously 'the use of force is a reality of prison life' and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Mason v. Ohio Dept. of Rehab. & Corr.* (1990), 62 Ohio Misc.2d 96, 101-102. (Internal citations omitted.)

{¶ 12} Plaintiff testified that two of the alleged assaults occurred on January 18, 2008. According to plaintiff, the first incident occurred during the morning of January 18, 2008, when Corrections Officer (CO) Prater ordered him to exit the shower so that he could be escorted to a segregation unit. Plaintiff did not comply with Prater's order and instead insisted that he needed mental health treatment. Plaintiff testified that Prater sprayed him with mace without provocation while other COs observed the confrontation. Plaintiff contends that he was subsequently placed in a cell and that he was denied the opportunity to shower after having been maced. However, during cross-examination, plaintiff testified that he was taken to the institution clinic and examined by a nurse immediately after he was maced.

{¶ 13} Defendant presented incident reports that were filed by COs Prater and Haywood which state that plaintiff had threatened to spit tobacco at Prater during a search of the shower. Plaintiff acknowledged that he threw tobacco and that Haywood was present during the incident. During cross-examination, plaintiff explained that he did not comply with Prater's orders because he did not consider them to be direct orders.

{¶ 14} With regard to the second incident, plaintiff testified that during the night of January 18, 2008, he was placed in a "suicide cell" that contained a torn mattress. Plaintiff testified that he objected to being placed in a cell with torn bedding because "someone could kill themselves." According to plaintiff, CO Burks opened the door to his cell, maced him, and subsequently issued a conduct report charging plaintiff with attempting to swallow bedding material in an effort to kill himself. Plaintiff testified that Burks lied about the suicide attempt to justify his use of mace on plaintiff.

{¶ 15} Plaintiff alleges that the third incident occurred in November 2007 after he became involved in a fight with another inmate. Plaintiff testified that Lieutenant Fields responded to a "man down" alarm and separated the inmates. According to plaintiff, he complied with Fields' orders. However, plaintiff testified that Fields sprayed him with mace for allegedly resisting being placed in handcuffs.

{¶ 16} The fourth incident, which also took place in November 2007, involved an altercation that occurred in the shower during a "shakedown." Plaintiff testified that a CO had discovered that a razor blade was missing whereupon plaintiff was searched by CO Shannon Bear. Plaintiff stated that Bear became angry and sprayed mace on him during the altercation.

{¶ 17} Each of the four incidents was referred to a Use of Force Committee for investigation. The committee members interviewed plaintiff and the COs involved in the incidents, and issued a report for each incident. (Defendant's Exhibits H, Q, DD, and KK.) The reviewing committees concluded that the force used by defendant's employees was neither excessive nor inappropriate. Edwin Voorhees Jr., SOCF's

warden, reviewed the committee reports and concurred with the findings of the committees.

{¶ 18} Plaintiff's own testimony undermined his credibility regarding the allegations that defendant's employees used excessive force against him. With regard to the first incident, plaintiff insisted that he told Prater that he needed mental health treatment and he admitted that he had refused to comply with Prater's orders. According to plaintiff, he had been placed on suicide watch at the time of the second incident, and he did not deny that he had attempted to eat the bedding material. Regarding the November 2007 incidents, plaintiff admitted that he had entered the cell of the other inmate who was involved in the fight and that plaintiff was given an order to stop fighting before he was sprayed with mace. Plaintiff admitted that during the shakedown that precipitated the fourth incident, he "had words" with the CO just before he was sprayed with mace. In light of these admissions, the court finds plaintiff's testimony that defendant's employees used mace without provocation was less than credible.

{¶ 19} Based upon the foregoing, the court concludes that the staff involved in the incidents of January 18, 2008, and November 2007, used appropriate force at all times.

{¶ 20} In Count Five of his complaint, plaintiff asserts that employees of defendant are responsible for the loss of personal property, including personal papers and a tape player that were confiscated from him. Plaintiff testified that he was informed that he could not possess the confiscated items while he was housed in the segregation (J-2) unit and that the tape player was contraband. Plaintiff acknowledged that CO Ward packed up his property and completed an inventory of the items on defendant's inmate property record. (Defendant's Exhibit LL.)

{¶ 21} "When prison authorities obtain possession of an inmate's property, a bailment relationship arises between the correctional facility and the inmate. By virtue

of this relationship, [defendant] must exercise ordinary care in handling and storing appellant's property." (Additional citations omitted.) *Triplett v. S. Ohio Corr. Facility*, Franklin App. No. 06AP-1296, 2007-Ohio-2526, ¶7. However, "[defendant] does not have the liability of an insurer (i.e., is not liable without fault) with respect to inmate property, but it does have the duty to make reasonable attempts to protect such property." Id. Furthermore, to establish that defendant is liable for the loss of an inmate's property, "plaintiff must produce evidence which furnishes a reasonable basis for sustaining his claim. If his evidence furnishes a basis for only a guess, among different possibilities, as to any essential issue in the case, he fails to sustain the burden as to such issue." *Freeman v. S. Ohio Corr. Facility,* Ct. Cl. No. 2006-06949, 2007-Ohio-1758, ¶14, citing *Landon v. Lee Motors, Inc.* (1954), 161 Ohio St. 82.

{¶ 22} Plaintiff testified that his property was packed in a box prior to his transfer to a segregation unit. Plaintiff acknowledged that he has not yet received his property and the court finds that plaintiff has not shown that the conditions of his confinement have changed such that he is entitled to possess the property. Accordingly, plaintiff has failed to prove by a preponderance of the evidence that his property was lost or stolen.

{¶ 23} In Count Six, plaintiff alleges both that defendant's mental health policies subjected him to patient abuse and neglect at the hands of defendant's mental health staff and that the RIB violated his right of due process during a disciplinary hearing. Defendant asserts that implementation of the policies involves a high degree of official discretion and, therefore, that defendant and its employees are immune from liability.

{¶ 24} The Supreme Court of Ohio has held that "[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State* (1984), 14 Ohio St.3d 68, 70; *Van Hoene v. State* (1985), 20 Ohio App.3d 363, 364.

Additionally, "[p]rison regulations * * * are primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates." *State ex rel Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479, 1997-Ohio-139. Accordingly, plaintiff's claims based upon alleged violations of internal DRC policies must fail.

{¶ 25} Furthermore, to the extent that plaintiff alleges claims based upon the denial of his civil and constitutional rights by the RIB, it is well-settled that such claims are not actionable in the Court of Claims. See *Thompson v. Southern State Community College* (June 15, 1989), Franklin App. No. 89AP-114; *Burkey v. Southern Ohio Corr. Facility* (1988), 38 Ohio App.3d 170.

{¶ 26} In Count Seven, plaintiff alleges that defendant has failed to provide nutritious meals such that he has been "under fed."

{¶ 27} Inmate complaints regarding the conditions of confinement are treated as claims arising under 42 U.S.C. 1983. *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 91, 1994-Ohio-37. It is well-settled that such claims are not actionable in the Court of Claims. See *Thompson*, supra, *Burkey*, supra.

{¶ 28} Based upon the foregoing, it is recommended that plaintiff's claim which is premised upon the alleged violation of his constitutional rights be dismissed and that judgment be rendered in favor of defendant on the remaining claims.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____

STEVEN A. LARSON
Magistrate

cc:

Jennifer A. Adair               David Easley, #306-400
Assistant Attorney General      P.O. Box 45699
150 East Gay Street, 18th Floor    Lucasville, Ohio 45699
Columbus, Ohio 43215-3130

Magistrate Steven A. Larson

AMR/cmd
Filed December 10, 2009
To S.C. reporter January 5, 2010